J-A29031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SHANA LEA PUTHUFF | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRIS RYAN RAMSEY | : | |
| | : | |
| Appellant | : | No. 668 WDA 2025 |

Appeal from the Order Entered May 7, 2025
In the Court of Common Pleas of Greene County
Civil Division at No. AD-193-2013

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED:  January 21, 2026**

Chris Ryan Ramsey (Father) appeals from the order which maintained his sole legal and physical custody of the parties' daughter, B.N.R. (Child), and directed that Shana Lea Puthuff (Mother) seek reunification therapy.  After careful consideration, we affirm.

Child was born in February 2012.  Father has been Child's primary caretaker since 2013, when Child was an infant and the parties began litigating custody.  Mother has "significant issues."  Order, 5/7/25, at 4.  Mother has a lengthy history of abusing cocaine and methamphetamine.  N.T., 3/20/25, at 24, 34-36, 68-69, 75.  She has been involved with the criminal justice system.  *Id.* at 36-37, 73-76, 96.  In addition, Mother has been involved with Children

and Youth Services (CYS) in a matter pertaining to her younger child.[1] ***Id.*** at 70, 80-83, 103-04.

Mother's last contact with Child was in October 2018. ***Id.*** at 27. On March 4, 2019, the trial court granted Father sole legal and physical custody of Child. The court directed Mother to "successfully complete an inpatient rehab program" and provide documentation of her compliance with the program. Order, 3/4/19. The court also provided Mother with "supervised periods of custody two times per week." ***Id.*** Mother did not attend the court-ordered rehab or exercise supervised visitation with Child. On July 3, 2023, the trial court entered an order confirming that the March 4, 2019 order "was the controlling custody order regarding [C]hild." Order, 7/3/23.

Mother became sober on July 6, 2023. N.T. at 43. On August 28, 2024, Mother filed a petition to modify custody. Father filed a response in which he argued:

> Mother's [p]etition does not provide any support for why a modification of custody would be in [C]hild's best interest. Further, per the current custody order, Mother has not completed a verified inpatient rehabilitation program and provided documentation of same to the [c]ourt and to Father, nor has she exercised any of the supervised visits with [C]hild since they have been granted. Mother has not had any contact with [C]hild in over five years. [C]hild is flourishing under Father's sole physical and legal custody. To disrupt that would be directly contrary to [C]hild's best interest.

Answer to Petition for Modification of Custody, 9/5/24, at 4.

---

[1] Father is not the father of Mother's younger child.

The trial court held a hearing on March 20, 2025. Mother testified to maintaining her sobriety since July 6, 2023. She presented testimony from a nurse practitioner who prescribes and manages her prescription medication; the owner of the delicatessen where she works; and her Narcotics Anonymous sponsor. Father testified and presented testimony from Child's longtime babysitter. The court also interviewed Child in chambers.

After hearing the evidence, the trial court remarked, "I'm not a hundred percent sure what I'm going to do with this." N.T. at 261. The court discussed the statutory custody factors set forth in 23 Pa.C.S. § 5328 regarding Child's best interest, but stated that its decision was "not going to [be] on the record right now." *Id.* at 266.

On May 7, 2025, the trial court entered an order maintaining Father's sole legal and physical custody of Child, and directing Mother to participate in reunification therapy. On May 30, 2025, Father filed a notice of appeal and concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court did not file a responsive opinion, but advised that it was relying on the May 7, 2025 order to explain its decision, "with no additions to the record." Statement Pursuant to Pa.R.A.P. 1925, 6/3/25.

Father presents the following claims for our review:

I. Did the trial court commit an abuse of discretion in failing to require … Mother to comply with prior [o]rders of [c]ourt?

II. Did the trial court err in ordering reunification therapy for Mother[,] when Father has exercised sole legal and physical custody of [C]hild since 2018?

III. Did the trial court abuse its discretion in failing to consider **Hughes v. Hughes**, [463 A.2d 478 (Pa. Super. 1983),] in which the Pennsylvania Superior Court held that "[t]he guiding polestar in deciding all cases involving a child ... is the best interests of the child"?

IV. Did the trial court commit an abuse of discretion in failing to consider that Mother did not prove that it is in the best interest of [C]hild for her to have reunification therapy with Mother?

V. Did the trial court abuse its discretion in failing to consider the evidence that Father presented regarding Mother's dangerous lifestyle?

Father's Brief at 4-5.

We review the trial court's order for an abuse of discretion. **See Taylor v. Smith**, 302 A.3d 203, 206 (Pa. Super. 2023). "Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand." **Id.** at 207 (citing **S.C.B. v. J.S.B.**, 218 A.3d 905, 913 (Pa. Super. 2019)). "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion[.]" **King v. King**, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting **Hanson v. Hanson**, 878 A.2d 127, 129 (Pa. Super. 2005)). Similarly, the parties in a custody action "cannot dictate the amount of weight the trial court places on evidence." **K.D. v. E.D.**, 267 A.3d 1215, 1230 (Pa. Super. 2021) (citation omitted).

We further recognize the "paramount concern" for a child's best interest. **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted);

*see also* 23 Pa.C.S. § 5328(a). "The best-interest standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***D.K.D. v. A.L.C.***, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted).

Father first argues that the trial court erred by not requiring Mother to comply with its prior order "that require[d] her to complete a court-verified inpatient rehabilitation program prior to exercising custody of the [C]hild, and … in failing to require [Mother] to comply with this provision before beginning reunification therapy with [C]hild." Father's Brief at 20. Father stresses that "Mother has not exhibited her sobriety by completing a verified rehabilitation program through the court." ***Id.*** at 22. This argument is not persuasive.

We have observed:

> [T]he normal means of enforcing a partial custody or visitation order is by contempt proceedings. Pa.R.Civ.P. 1915.12; 24 Am.Jur.2d *Divorce and Separation* § 997 (1983). A custody award should not be used to reward or punish a parent for good or bad behavior. "[A] change of custody is just as important to the child and to others as an original award of custody, and the parties should be afforded the same type of hearing on the subsequent application as they are entitled to on an original award." 24 Am.Jur.2d *Divorce and Separation* § 1008 (1983).

***Rosenberg v. Rosenberg***, 504 A.2d 350, 353 (Pa. Super. 1986) (some citations omitted).

Here, Father concedes he "did not assert a contempt action before the trial court regarding … the rehabilitation provision" in the court's prior order. Father's Brief at 22. Moreover, the trial court addressed Father's claim when

- 5 -

it ordered Mother to seek reunification therapy. The court noted "it does not appear that Mother has ever received the type of treatment contemplated by the [c]ourt previously." Order, 5/7/25, at 5. The court explained:

> This [c]ourt is not going to order such now, but it is another indication of Mother's lack of accountability and lack of seriousness as to meeting Father's and this [c]ourt's concerns.
>
> [T]here is no doubt that Mother is doing much better in her sobriety and her life in general. She is to be commended for that. Father's trepidation … though[,] is warranted and understandable, if not ultimately sustainable[, because] Pennsylvania custody law would impart that if Mother continues to do well, she is likely to receive some level of custody from this [c]ourt.

*Id.*

The trial court's reasoning is supported by the record and applicable law. Thus, we discern no error or abuse of discretion.

Father's remaining claims are related and repetitive. They are also unavailing. Father argues that the trial court erred and abused its discretion in ordering reunification therapy because reunification therapy is inconsistent with Mother's dangerous lifestyle and Child's best interests. Father cites evidence involving Mother's past drug use and emphasizes that he has had sole legal and physical custody of Child since 2018. Father's Brief at 23-44. Father refers to "the sheer volume of dangerous situations Mother had involved [C]hild in," and states that Child "has been thriving in Father's sole care." *Id.* at 24-25. Father reiterates that "Mother has long struggled with drug abuse and severe mental health issues," and describes events that occurred prior to Mother obtaining sobriety in July 2023. *Id.* at 29. These

claims are unconvincing because Father relies primarily on evidence of events that occurred prior to Mother becoming sober, and disregards evidence pertaining to Mother's recent sobriety. In addition, Father may not "dictate the amount of weight the trial court places on evidence." **K.D. v. E.D.**, 267 A.3d at 1230.

The trial court recognized that parents have a fundamental right to the care and custody of their child. **See J.C.D. v. A.L.R.**, 303 A.3d 425, 433 (Pa. 2023); **see also Ellerbe v. Hooks**, 416 A.2d 512, 513 (Pa. 1980) (stating that "in every custody dispute the fundamental issue is the best interest of the child[, but] there can also be no doubt that the parent-child relationship should be considered of importance in determining which custody arrangement is in the child's best interest"). At the conclusion of the hearing, the trial court observed that Mother "is [Child's] mother, and that is … a status that she has and will continue to have." N.T. at 259. However, the court also noted that Mother was "still blaming others," and opined that "responsibility and taking responsibility are paramount to successful recovery. [Mother] has not done that." **Id.** at 259-60. As indicated above, the court discussed the statutory custody factors pertaining to Child's best interest. **Id.** at 258-66. For example, the court addressed Child's safety, and found that factor favored "Father heavily," although the "most recent history would suggest that Mother may be able to ensure the safety of [C]hild, but the track record to date has not indicated that." **Id.** at 261. The court also found that the performance of parental duties and need for stability and continuity favored Father. **Id.** at

262. Regarding which party was more likely to encourage contact with the other party, the court stated, "in some ways this factor favors Mother," who expressed that she was "thankful [Father] has been the father that he has." *Id.* Overall, the court found that most factors favored Father. In its order, the court explained:

> In the [c]ourt's mind, Mother continues to have significant issues. While somewhat taking responsibility, she still blames Father, at least in part, for her addictions. It is rather remarkable that the furthest she is willing to go in taking ultimate responsibility is to testify that she doesn't blame Father "solely." At this stage in her apparent recovery, this is a troubling and concerning stance to take.
>
> Further, Mother is taking the position that she deserves another chance and cannot seem to understand why Father is dubious as to her ability to have successful partial physical custody or visitation, while at the same time testifying that she does not want the father of her other child involved at all because "he lost his mind on drugs" and does not want her or her child to ever be around him again. The irony is that this is nearly the exact position Father is taking as to Mother, and Mother does not seem to understand or appreciate the dichotomy of her positions.

Order, 5/7/25, at 4-5.

Our review reveals that the trial court did not err or abuse its discretion in considering the evidence, and ordering that Father maintain sole legal and physical custody of Child and that Mother seek reunification therapy. *See A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (stating that appellate interference "is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough").

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/21/2026